**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| BYRON REDMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-03048 |
| | ) |
| DARREN BRYANT, Mayor of Vill. of Robbins, | ) Hon. Judge |
| Illinois, in his individual and official capacities, | ) |
| capacity, and the VILLAGE OF ROBBINS, | ) **JURY DEMANDED** |
| as indemnitor, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, BYRON REDMOND, ("Redmond" or "Plaintiff") by and through his attorney, GIANNA R. SCATCHELL of DISPARTI LAW GROUP, P.C., and complains of Defendants, DARREN BRYANT, ("Bryant") in his official and individual capacities and the VILLAGE OF ROBBINS (collectively "Defendants"), and alleges upon personal knowledge regarding himself or each of his acts, and on belief, regarding all other matters:

**NATURE OF THE CASE**

1. Redmond is a veteran police officer and the former Deputy Chief in the Village of Robbins. Plaintiff brings this action against Defendants for reinstatement to his former position as Deputy Chief of police, for back pay, front pay, back benefits, pre- and post-judgment interest, and compensatory damages.

1

## JURISDICTION AND VENUE

2. This court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction). The court also has supplemental jurisdiction of Plaintiff's claims under Illinois law pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court because Defendants' acts complained of occurred in the Village of Robbins, Illinois, Cook County, which is within the jurisdictional boundaries of this Court.

## PARTIES

4. Redmond is a resident of Cook County, Illinois. He was the full-time Robbins' Deputy Chief until his wrongful termination on or about May 13, 2022. The defendants' illegal and unjustified acts caused Redmond's wrongful termination from his position as Deputy Chief and a police officer.

5. Bryant is an individual residing, on information and belief, in the Village of Robbins, Illinois. Since May 11, 2021, Defendant Bryant has been the elected Mayor of Robbins, Illinois. As Mayor, Bryant is a final policymaker and he engaged in the conduct complained of while acting under the color of law. Bryant is sued in his official and individual capacities.

6. Defendant, Village of Robbins, Illinois (hereafter the "Village") is a unit of local government organized under the laws of the State of Illinois.

7. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. Accordingly, the Village is responsible for the challenged actions of Bryant and the Village.

### Redmond's Deputy Chief Status

8. Prior to his termination on May 13, 2022, Redmond was employed by the Village as the Deputy Chief of the Robbins' Police Department ("RPD").

9. On belief, Redmond has been a police officer for RPD for approximately eight (8) years.
10. Redmond has an extensive and exemplary law enforcement background.
11. At all times relevant, Redmond satisfactorily performed his duties until he was unlawfully removed and terminated.

### Deputy Chief Redmond was improperly terminated and demoted.

12. On or about March 2022, Brandt obtained a video from a purported pseudonym, Tiffany Jackson, that allegedly depicted Redmond consuming alcohol with other Village administrators, and a dispatcher in his office while he was off duty.
13. Consistent with past practice, senior Village administrators frequently engaged in the consumption of alcoholic beverages within their offices during non-working hours.
14. Redmond observed multiple high-ranking administrators, including Defendant Bryant, partaking in, or offering alcoholic drinks during off-duty periods, as well as on-duty periods, indicating that this behavior constituted a regular and continuous practice.
15. The claims pending against Redmond were not terminable offenses.
16. Defendant Bryant sought to terminate Redmond's employment despite the absence of a legitimate rationale, incorrectly asserting that Redmond held an at-will employment status.
17. Bryant forced Sheppard to meet with him 11 times to discuss Redmond's pending termination.
18. Sheppard unsuccessfully tried to educate Bryant about the requisite disciplinary policies, the minimum due process afforded to Redmond.

### Defendants Eviscerated Redmond's Procedural Due Process Rights

*Defendants Failed to Properly Remove Redmond as Deputy Chief*

19. The published Code of Ordinances for the Village of Robbins located on its website contains no mention of how the appointment or removal of the position of Deputy Chief is handled.

20. Defendant Robbins' website contains a disclaimer stating, "This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality."

21. To date, Redmond is unaware of any other Village ordinances in effect that would govern the appointment or removal of the Deputy Chief.

22. Therefore, Redmond's removal as Deputy Chief defaults to Illinois law, which establishes a process to appoint and remove a Deputy Chief in a home-rule municipality. 65 ILCS §§ 5/10-2.1-4.

23. Pursuant to 5/10-2.1-4 states that:

    Notwithstanding any other provision of this Section, a non-home rule municipality of 130,000 or fewer inhabitants, through its council or board of trustees, may, by ordinance, provide for a position of Deputy Chief to be appointed by the chief of the police department.

    The Deputy Chief position shall be an exempt rank immediately below that of Chief. The Deputy Chief may be appointed from any rank of sworn, full-time officers of the municipality's police department, but must have at least 5 years of full-time service as a police officer in that department.

    A Deputy Chief shall serve at the discretion of the Chief and, if removed from the position, shall revert to the rank currently held, without regard as to whether a vacancy exists in that rank.

24. Ultimately, Sheppard's position remained unchanged, and Sheppard submitted a final written report finding against Redmond's termination.

25. Bryant expressed dissatisfaction with this principled stance and flouted these policies, and removed Redmond as Deputy Chief without Sheppard's approval and without presenting written charges to the Village Council.

26. According to state statute, Sheppard as police chief, was the only Village official vested with appointment and removal powers to remove Redmond as the Deputy Chief properly.

27. Bryant lacked authority under Illinois law to remove Redmond unilaterally. *Lane v. Vill. Of Heyworth*, 2019 I.L. App (4th) 180488, ¶ 23, 133 N.E.3d 1282, 1289.

28. Redmond never received any verbal warnings, disciplinary suspensions, or formal counseling sessions to try to resolve any of the Village's purported issues with his performance.

29. Defendant Bryant failed to inform Redmond of the reason(s) for his termination in violation of the Village's ordinances, Illinois law, and federal law.

30. The Village Board held one regular meeting but never put Redmond's discipline on the agenda in violation of the Open Meetings Act.

31. Redmond cannot seek administrative review of his termination because Bryant, as Mayor, is not an administrative body defined by the Illinois Administrative Review Act, and there was never a hearing before an administrative body to review.

32. Bryant's decision is neither valid nor final since it was never approved by the appropriate bodies. *Baldermann v. Bd. Of Trustees of the Police Pension Fund, Vill. of Chi. Ridge*, 2015 I.L. App (1st) 140482 ¶¶ 31-34.

33. In response to his unlawful removal and termination, Redmond appealed both decisions, but the Defendants never responded to Redmond's appeal even though they are required to do so.

34. Ultimately, Redmond received **no process** regarding his termination as Deputy Chief and as a police officer in violation of Illinois law.

### Retaliation by Reprimand

35. Notably, the two other Village administrators observed on the video allegedly drinking alcohol were not terminated nor did they lose their positions and/or appointments.

36. Defendant Bryant's actions engendered intense public controversy questioning whether his unilateral termination was an abuse of power prompting the Defendants to compel Redmond to sign a Last Chance Agreement ("LCA") to avoid continued scrutiny.

37. A true and correct copy of the LCA is attached hereto as Exhibit A.

38. The LCA was framed as a continuation of employment, not as a reinstatement of employment which should not foreclose Redmond's ability to collect back pay, pension credits, and any other accrued benefits.

39. The LCA provided that the Village "agrees and acknowledges that the continuation of [Redmond's] employment is on a "once in a lifetime basis." Prior Exhibit A ¶ 4.

40. The LCA allowed Redmond to return to work, with strings attached, including:

    a) Being demoted to the rank of sergeant;

    b) expressly requiring Redmond to waive any claims to backpay; and

    c) agreeing to be bound by the terms of the LCA until December 31, 2029.

41. The LCA failed to provide the following:

    a) A written summary of the employee's conduct and performance violations or policies that were violated;

    b) A written summary of the progressive discipline that Byron received;

    c) Expectations of exactly what Redmond must do to keep his job (e.g., a drug or rehab program, status reports, or medical release); and

    d) Timeframes for meeting expectations.

42. Under the terms of the LCA, the Village can terminate Redmond if he does not comply with or complete the terms of the LCA, including waiving his claim to backpay, pension credits, any claims to his improper termination, and any prospective discrimination rights.

6

43. As a matter of public policy, requiring Redmond to sign the waiver of future claims constitutes a materially adverse action that would dissuade a reasonable person from engaging in protected activity, thus reducing employees' propensity to file complaints in the first place. *See Beckel v. Wal-mart Associates, Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) (citations omitted) (suggesting in dicta that threatening an employee with termination if he filed suit under Title VII would be "actionable as retaliation").

44. Despite the verbiage of the LCA, indicating that the Union agreed to the LCA, the Union never signed it.

### COUNT I: DUE PROCESS VIOLATION – Improper Removal as Deputy Chief
### Plaintiff v. Defendants

45. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

46. Redmond maintained a protected property interest in his position as Deputy Chief under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Illinois Constitution of 1970, art. 1, §2, and the Village ordinances.

47. Redmond was never allowed to be heard in his defense before or after he was removed as Deputy Chief.

48. Bryant violated Redmond's due process rights by unilaterally terminating Redmond and disregarding Sheppard's report finding against termination, and in no other way providing Redmond with an opportunity to be heard, in violation of the due process clause of the United States Constitution, amendment XIV, and the Illinois Constitution of 1970, article 1, § 2.

49. Neither Defendant Village nor Bryant has the authority to deny Redmond such process.

50. As a direct and proximate result of the Defendants' actions, Redmond has been deprived of a recognized property interest protected by the Fifth and Fourteenth Amendments to the United

States Constitution in violation of 42 U.S.C. 1983.

WHEREFORE, Plaintiff, Byron Redmond respectfully requests that this Court enter an order against Defendants Village and Bryant rescinding his removal as Deputy Chief and reinstating him as Deputy Chief; to be made whole for all losses, including back pay, and back benefits with interest, pension losses; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants Village's and Bryant's conduct; a declaratory judgment that Defendants Village's and Bryant's actions violate 42 U.S.C. §1983; and any other relief that this Court deems just and equitable. Such back pay continues from the start date of May 13, 2022, until he returned under the LCA.

## COUNT II VIOLATION OF CIVIL RIGHTS – DUE PROCESS (BOFPC)
### Plaintiff v. Defendants Village and Bryant

51. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

52. Defendant, Village's Board of Fire and Police Commissioners (hereinafter the "BOFPC"), is a statutorily created administrative agency under 65 ILCS 5/10-2.1-1 *et seq*.

53. While Deputy Chief, Redmond was on furlough from the rank of sergeant because both his appointment and removal as Deputy Chief occurred before he was eligible to retire and collect his pension. § 5/10–2.1–4 ("[i]f a member of the department is appointed chief of police before being eligible to retire on a pension, he shall be considered as on furlough from the rank he held immediately before his appointment").

54. As a sergeant, Redmond was entitled to a "just cause" termination before an impartial BOFPC within 30 days of any written charges filed against him and an opportunity to be heard.

55. "Cause" in Illinois has been defined as "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline

8

and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his no longer occupying the place."

56. As a police sergeant, Redmond had a protected property interest in his position as a police officer under the Due Process Clause of the Fourteenth Amendment.

57. Redmond's property interest derives from the Collective Bargaining Agreement, Illinois law, BOFPC's Rules, and Village ordinances.

58. Defendants disregarded Sheppard's report finding against terminating Redmond.

59. Defendants also never filed a written statement of charges seeking Redmond's termination as a police officer to establish the requisite "cause" as required by statute.

60. Redmond was never allowed to be heard in his defense before or after he was removed as a police officer.

61. No hearing ever occurred before the BOFPC in any official proceeding or final order rendering Redmond's termination as a police officer ineffective and in violation of federal law, state law, and Village ordinance and therefore should be rescinded.

62. Defendant Bryant lacked the authority to terminate Redmond without "just cause unilaterally" and without providing the requisite process as described above before the BOFPC.

WHEREFORE, Plaintiff, Byron Redmond respectfully requests that this Court enter an order against Defendants Village and Bryant rescinding his termination and reinstating him into his position as a sergeant without the last chance agreement terms; to be made whole for all losses, including back pay, and back benefits with interest, pension losses; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants Village's and Bryant's conduct; a declaratory judgment that Defendants Village's and Bryant's actions violate 42 U.S.C. §1983; and any other relief that this

Court deems just and equitable. Such back pay continues from the start date of May 13, 2022, until he returned under the LCA.

## COUNT III—MONELL CLAIM
### Redmond v. Village of University Park, Illinois

63. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

64. At all times relevant, Defendant Bryant was the elected Mayor of the Village and was also acting as the interim Village Manager of the Village.

65. Under either position, Bryant was a final policymaker.

66. Defendant Village trivializes, ignores, and imposes arbitrary and capricious penalties upon employees for alleged misconduct without any regard for consistency in recommending or imposing discipline, without regard for federal law, state law, or its ordinances or due process of law.

67. The Village set upon a concerted course of unlawful conduct, forcing Redmond out of his position as Deputy Chief and as a police officer by relying on an unsubstantiated social media posting that purported to show Redmond drinking alcohol in his office while off duty to justify removing him as Deputy Chief.

68. The other Village employees in the video allegedly drinking were not punished as harshly as Redmond.

69. The Village denied Redmond various rights afforded to him by Illinois and federal law including:

    a) Failing to give Redmond notice of the charges levied against him;

    b) Not providing Redmond an opportunity to be heard before or after his improper removal and termination before an impartial board;

    c) Disregarding Sheppard's final report finding against removing and terminating Redmond;

    d) Denying Redmond's right to appeal both the removal as Deputy Chief and as a police officer; and

    e) Conditioning Redmond's return to work on a one-sided LCA.

70. On belief, the Village only provided Redmond with the LCA so that it could insulate itself from Bryant's improper and unlawful removal of Redmond as Deputy Chief and as a police officer and also by requiring him to sign a "once in a lifetime" LCA to waive any legal claims for his unlawful termination, his claims to backpay, pension credits, other accrued benefits, and prospective discrimination claims.

71. On further belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to the Village's disciplinary practices and policies and its disproportionate enforcement of said practices and procedures.

72. Because the Village employed the foregoing express acts espoused by the Village through Bryant to retaliate against Redmond, Redmond suffered harm including, without limitation, loss of career and reputation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, Byron Redmond requests that this Court enter judgment in his favor and against Defendant Village in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, and consequential damages, for emotional distress and reputational harm, for attorneys' fees under § 1988, as well as order the Village to reinstate Redmond both as a police officer not subject to an LCA and Deputy Chief, restore his benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

## COUNT IV—VIOLATION OF ILLINOIS WAGE PAYMENT & COLLECTION ACT
### Redmond v. Defendant Village

73. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

74. Redmond served as Deputy Chief pursuant to Village ordinance, which constitutes a binding and enforceable contract supported by valuable consideration defined under the Illinois Wage Payment and Collection Act.

75. Redmond performed all conditions precedent and other obligations required under the Agreement. He was not convicted of any felony or crime involving moral turpitude, and he was not fired for any "just cause" reason before a proper adjudicating body.

76. The Collective Bargaining Agreement constitutes a binding and enforceable contract supported by valuable consideration defined under the Illinois Wage Payment and Collection Act.

77. The LCA had the effect of demoting Redmond to the position of sergeant, which put him back within the protection of the Collective Bargaining Agreement.

78. The LCA has the effect of rescinding his termination, thus entitling him to the backpay, lost pension credits, and other benefits that accrued during the time he was not paid.

79. For nearly 10 months, Redmond was not paid after he was removed as Deputy Chief and terminated as a police officer.

80. Further, as no legally appropriate termination occurred, Redmond's right to his salary and benefits has never abated, including any accrued benefits.

81. Although Redmond timely demanded payment on such benefits, Defendant Village has not paid Redmond's backpay or other accrued benefits in violation of the Act.

82. In fact, the LCA expressly required him to waive any such claims to return to work.

WHEREFORE, Plaintiff, Byron Redmond prays that this Court finds Defendant Village liable for

(a) All lost wages, benefits, and other amounts resulting from its violations of the IWPCA; (b) Statutory penalties in the amount of two percent per month; (c) costs, attorneys' fees, and all other relief available under the IWPCA; and (d) such other relief as the Court deems just and proper.

## COUNT V– INDEMNIFICATION
### Redmond v. Defendant Village

**83.** Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**84.** Defendant Village is obligated to assume financial responsibility for the actions committed by its officials or employees.

WHEREFORE, for the foregoing reasons, Plaintiff, Byron Redmond requests that this Court enter judgment in his favor and against Defendant Village and order it to indemnify any other Defendant in this matter.

## COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, Byron Redmond, prays that this Court:

a) Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b) Enter judgment in the Plaintiff's favor and against Defendants;

c) Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices;

d) Award the Plaintiff actual damages suffered to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

e) Award the Plaintiff compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

f) Award Plaintiff exemplary damages to the extent permissible by law against Bryant only;

g) Award the Plaintiff prejudgment interest on these damages;

h) Grant court costs and reasonable attorneys' fees under applicable law; and,

i) Grant additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

**85.** Plaintiff, Byron Redmond, demands a trial by jury on all issues so triable.

Respectfully Submitted,

Byron Redmond

s/ Gianna Scatchell

By:_____

Plaintiff's Attorney

Dated: May 26, 2023

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: Gia@dispartilaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she filed the foregoing document via this Court's CM/ECF filing system on May 26, 2023.

By:    s/ Gianna R. Scatchell